**AFFIDAVIT**

GOVERNMENT EXHIBIT 1

1. I, Armida Maria Macmanus, having been duly sworn according to law, depose and state:

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since November 2005. I am currently assigned to the Albuquerque Field Office, Las Cruces Resident Agency. During my career, I have investigated violent crimes (including cases with victims), drug offenses, white-collar crimes, and public corruption, and I have assisted in investigations of crimes against children. As a federal agent, I am authorized to investigate violations of laws of the United States. During my tenure with the FBI, I have received formal and informal training involving violent crimes, financial crimes, and narcotics investigations, among others. I have utilized investigative techniques including, but not limited to, physical surveillance, source interviews, toll record analysis, financial analysis, and execution of search warrants.

3. I am the case agent investigating Jeffrey Steven Clay. My federal investigation began in approximately June 2022. Through the course of my investigation, I have read and reviewed reports generated by the El Paso Police Department (EPPD) and the Doña Ana Sheriff's Office (DASO). I have obtained six federal search warrants related to this investigation and have requested seven grand jury subpoenas for records. I have reviewed the records from that legal process, including, but not limited to, records from Google, Verizon, AT&T, as well as identified victims' (both of this offense as well as other investigations) medical records, bank records, and am awaiting records from Clay's employer (El Paso Independent School District) as well as records from Walgreens related to this investigation. I have also obtained records from the Department of Homeland Security related to any foreign travel by Clay over the past year. I also know that prior to my federal investigation, state law enforcement

executed a search warrant at Clay's residence related to this case and obtained a search warrant for Clay's DNA. I have also read open-source information regarding Clay. I have generated and reviewed FBI reports. I have reviewed audio and video recordings and their corresponding transcripts. I have met with victims and witnesses identified in this investigation. I have reviewed evidence, including, but not limited to, photographs, digital evidence, physical evidence, medical reports, and laboratory reports as it relates to this investigation. This affidavit does not include all the information I know about the case. Unless otherwise noted, the dates I refer to in this affidavit are approximate.

4. Based on my investigation, I know that Clay is currently employed as the Executive Director of Analytics, Strategy Assessment and PEIMS[1] for El Paso Independent School District. I know that Clay has been employed with El Paso Independent School District (EPISD) since at least 2005, though he has not had his current title that entire time. I know that Clay previously worked for EPISD as a school principal.

5. Below is a brief summary of what my investigation has revealed regarding the facts forming the basis of the present indictment:

6. On August 4, 2021, a woman identified as "Jane Doe" in Counts 1 and 2 of the indictment, was out at a bar in El Paso, Texas, with her significant other. After a brief verbal argument with her significant other, Victim 1 left the bar to look for a ride to her friend's house. A man—later identified as Jeffrey Steven Clay— in a vehicle pulled up and asked Jane Doe if she wanted a ride. Clay agreed to take Victim 1 to her friend's house on a specific street in El Paso, Texas. Jane Doe got in the car with Clay, who told her his name was Jeffrey. Then,

---

[1] PEIMS stands for Public Education Information Management System.

rather than driving Jane Doe to the address he stated he was going to, Clay drove Jane Doe to his residence in Anthony, New Mexico. Clay never asked Jane Doe if she wanted to go to his residence, and Jane Doe never agreed to go anywhere with Clay besides her friend's house in El Paso.

7. Once at Clay's residence, Clay tried to kiss Jane Doe, and Jane Doe rebuffed his kiss. Clay then slapped Jane Doe in the face, handcuffed her, and took her to a bedroom. Once in the bedroom, Clay began kissing Jane Doe on her face and body while she remained handcuffed. Jane Doe repeatedly asked Clay to stop and to remove the handcuffs, but Clay refused and tightened the handcuffs. While on top of Jane Doe, Clay punched Jane Doe in the face. Clay then vaginally and anally penetrated Jane Doe with his fingers and penis, while she was handcuffed and against her will. Clay then put his penis in Jane Doe's mouth and ejaculated. Jane Doe was crying throughout the sexual assault, and, at times, tried to fight Clay off her. After the sexual assault, Jane Doe asked Clay if he was going to kill her.

8. Clay then drove Jane Doe from his house in Anthony, New Mexico, back to El Paso, Texas. On the way back, Clay told Jane Doe, "you do know that I'm a cop?" Clay went on to say he could charge her for assaulting a police officer.[2] While at a stop light, Jane Doe saw an opportunity to escape, so Jane Doe jumped out of Clay's vehicle and ran to a nearby convenience store where Jane Doe and the store clerk called 911.

9. In the 911 call, Jane Doe, who was sobbing and distraught, told the emergency dispatcher that she had been kidnapped and raped. When EPPD officers arrived on scene, they observed

---

[2] According to Jane Doe, Clay had scratches on his neck from Jane Doe when she tried to stop Clay during the sexual assault.

marks on Jane Doe's wrists consistent with being handcuffed and redness around her eye consistent with being punched, as Jane Doe described.

10. A SANE examination was conducted, which revealed that Jane Doe had tears to her vaginal walls and anus, consistent with the sexual abuse she described. During the SANE examination, the examiner took swabs for DNA left on Jane Doe by her attacker. A sample of Clay's DNA was obtained pursuant to a State of New Mexico District Court search warrant. The DNA taken from Jane Doe during the SANE exam and Clay's sample DNA were sent to a crime laboratory for comparison. The details listed on the comparison report revealed a very high probability that Clay was a contributor to DNA profiles taken from Jane Doe's right neck area, left neck area, right breast area, left breast area, and left eyebrow area during the SANE exam on August 5, 2021.

11. During a subsequent traffic stop, Clay admitted he had handcuffs in his nightstand. Handcuffs were located in the nightstand next to the bed in Clay's residence during a search of the residence pursuant to a State of New Mexico District Court search warrant.

12. I obtained Jane Doe's Google and AT&T records, which corroborate that Jane Doe was in El Paso, Texas, as she described in the evening of August 4, 2021. Jane Doe's phone then moved from El Paso, Texas, to Anthony, New Mexico. Her phone was then stationary at Clay's residence in Anthony, New Mexico, before the phone moved back to El Paso.[3]

13. Through my investigation I also learned that Clay repeatedly sexually abused a minor, Victim 1, that Clay had close access to from about 2012 to 2014. I also learned that Clay

---

[3] Jane Doe stated that during the drive to Clay's residence, she dropped her phone in his car and did not have access to it during the time she was at Clay's house. While I was able to obtain records for Jane Doe's phone, it was never recovered after the assault.

again sexually abused Victim 1 as an adult. Victim 1 disclosed that from about the ages of about 14 to 16 years old, Clay orally, anally, and vaginally penetrated Victim 1 with his penis. Victim 1 reported the sexual abuse in 2014, but later recanted because of threats made to her by Clay. Victim 1 disclosed that in 2021, when she was an adult, Clay came to her residence and forcefully vaginally raped her. Clay was never criminally charged for any of this conduct.

14. Victim 1 disclosed that Clay is very savvy with computers and while he was threatening her to get her to recant her allegations of sexual abuse, Clay taught her how to delete information from a computer and cellphone hard drive. Clay also taught Victim 1 that it was essential to also delete data from the cloud in order to avoid the government from finding it. Victim 1 disclosed that she had seen child pornography on Clay's devices in the past.

15. Through my investigation, I also learned that Clay was arrested in 2005 and charged with solicitation of a prostitute. Those charges were later dismissed.

16. Through my investigation, I learned that Clay keeps multiple guns in his house.

17. Through my investigation, I learned that Clay regularly travels outside the United States. Clay's border crossing records reveal that Clay was admitted into the United States at a Port of Entry approximately 41 times from October 2021 to October 2022.

18. Throughout my investigation, I have obtained photographs of Clay on various dates that show the progression in his appearance over the years. The following are photographs of Clay taken on various dates:



19. Based on my review of all the materials associated with this investigation, I believe Jeffrey Steven Clay is the kind of individual who wields a position of power, thus making it very difficult for any victim of abuse to come forward with allegations against him. Based on my investigation, I believe he targets vulnerable victims in an effort to ensure he cannot be held accountable for him criminal conduct.

Respectfully submitted,

   /s/ 11/10/22
Armida Maria Macmanus
FBI Special Agent